**The CITY OF NEW YORK, Plaintiff,**

v.

**RAPGAL ASSOCIATES, The St. Nicholas Manor Associates, and Norman Rappaport, Defendants.**

**No. 84 Civ. 7526 (JMW).**

United States District Court,
S.D. New York.

Jan. 10, 1989.

tiff's motion for summary judgment on its claim that the defendants owed the City of New York $156,211. Now, for the first time, defendants argue that the Court lacks subject matter jurisdiction, and, as a result, must dismiss plaintiff's complaint and vacate its earlier decision. For its part, plaintiff seeks an order, pursuant to Rule 60(b) of the Fed.R.Civ.P., amending the judgment entered on January 27, 1987, which, plaintiff claims, failed to dispose of its claim for pre- and post-judgment interest.[1] The Court denies defendants' motion and grants plaintiff's motion in part.

## BACKGROUND

The Court will summarize the facts as it found them in its 1986 opinion. The defendants are real estate developers who participated in the federally funded and locally administered Neighborhood Strategy Area program ("NSA program") for the Hamilton Heights area of Manhattan. The NSA program was created as part of the Section 8 subsidized housing program by the Department of Housing and Urban Development ("HUD") in regulations found at 24 C.F.R. § 881.701 *et seq.* Designed by HUD to coordinate local housing and development planning with federal funding for low income housing, the program permits a local government to request HUD to designate a local Neighborhood Strategy Area ("NSA"). If HUD makes such a designation, then the local government may solicit and screen proposals for Section 8 housing submitted by private developers. As explained in the Court's earlier opinion, the Section 8 housing program was established by legislation codified at 42 U.S.C. §§ 1437–40 and 12 U.S.C. § 1715z–1.

HUD requires local governments to establish a plan to correct neighborhood deficiencies and to specify funding sources. *See* 24 C.F.R. § 881.703(c)(4). Federal regulations also require that a developer's proposal meet local regulations and ordi-

Alexandra S. Bowie, Asst. Corp. Counsel, New York City, for plaintiff.

Gilbert Wallach, Steven Rosen, New York City, for defendants.

## MEMORANDUM AND ORDER

WALKER, District Judge:

By a Memorandum and Order dated December 23, 1986, this Court granted plain-

1. Plaintiff's motion was filed on March 23, 1987, and defendants' motion was filed on October 30, 1987. By letter dated June 25, 1988, the parties informed the Court that they had entered into settlement discussions and requested the Court not to rule on any pending motions. By letter dated October 4, 1988, the parties informed the Court that they were unable to settle this matter and requested that it be returned to this Court's active calendar.

nances. *See* 24 C.F.R. § 881.707(b)(4). After a city determines that a project satisfies its local development plans and codes, it then forwards the project to HUD for approval. If approval is granted, then the developer becomes eligible for federal subsidies and local tax abatements. Under the program, the federal government grants rent subsidies to qualified low income families in order to help them procure safe and sanitary homes. The federal government then pays the landlord the excess between 30 percent of the tenant's income and the fair rental value of the apartment.

In May of 1979, the City—through its Department of Housing Preservation and Development ("HPD")—published a Notice of Funds Available, which invited Section 8 proposals from local developers. As the Court concluded in its first opinion, this Notice indicated that, as a prerequisite to participation in the program, a developer would have to agree to donate a certain amount of the profits from the Section 8 development to a local community organization. Before submitting their proposal to the City, the defendants agreed to donate $50,000 to the Hudson Piers Redevelopment Counsel ("Hudson Piers"), a local community group. The defendants then submitted an application to the City, which was accepted by the City and then HUD. HPD had approved the defendants' proposal subject to the defendants' reaching a satisfactory agreement with a qualified community organization. HPD never approved the defendants' contract with Hudson Piers and thus never indicated whether or not it satisfied the City's requirement.

In May and July of 1980, after the City and HUD had already approved the defendants' project, HPD issued a set of regulations that required each Section 8 developer to donate to a community organization, or to an escrow fund designed with qualified community organizations in mind, an amount equal to at least 2.75 percent of the low interest mortgage on the project. In the case of this project, that percentage translated into a sum of $156,211.

In its December 23, 1986, Memorandum and Order, 649 F.Supp. 1504, this Court rejected defendants' attempts to cast their relationship with the City as contractual. Consequently, the Court also rejected defendants' contentions that the City, by enforcing its July regulation, had deprived them of the expectation of their bargain— namely, that their agreement to donate $50,000 to Hudson Piers satisfied all their obligations under the Section 8 program. Rather, the Court concluded that "the defendants entered into the program with knowledge ... that the City intended to return some of the developers' profits back to the community through a qualified community organization," and that the regulations in question presented a "rational method of achieving the City's objective ..." Opinion at 1509–10.

## DISCUSSION

### A. *Subject Matter Jurisdiction:*

There is no statute of limitations that bars challenges to a court's subject matter jurisdiction; such motions can be made at any time. *See* Fed.R.Civ.P. 12(h)(3). The parties agree that diversity jurisdiction does not exist in this case. Thus, the Court must decide whether federal question jurisdiction exists.

Under 28 U.S.C. § 1331, jurisdiction lies in the federal courts for civil actions "arising under" federal law. The Second Circuit recently reviewed the standards a court must employ in its determination of whether or not a case "arises under" federal law, and thus whether a court has federal question jurisdiction:

> There are two tests under which an action may present a federal question. The first asks whether federal law creates the cause of action. If so, federal question jurisdiction exists ... If state law creates the cause of action, the second test asks whether that cause of action poses a substantial federal question ... Examining only those allegations which are properly raised in a well-pleaded complaint, the court must then determine whether the substance of those allegations raises a federal question.... "[T]he mere presence of a federal issue in a state cause of action does not auto-

matically confer federal question jurisdiction." To determine when the federal element is deemed sufficiently substantial we must look to the nature of the federal interest at stake ... [In summary,] to determine whether the court has federal question jurisdiction to decide the case, the complaint must contain either a federal cause of action or a state cause of action embodying a substantial federal question.

*West 14th Street Commercial Corp. v. 5 West 14th Owners Corp.,* 815 F.2d 188, 192–193 (2d Cir.) (citations omitted), *cert. denied,* — U.S. —, 108 S.Ct. 151, 98 L.Ed.2d 107 (1987).

■ It is unnecessary to determine whether the City based its suit on a federal or state cause of action. Instead, it is sufficient for this Court to find that a substantial federal question exists in this case. Federal law created HUD's NSA program and delineated the City's ministerial role. In this action, the City alleged that the defendants' participation in the federal NSA program obligated the defendants to comply with its regulations—regulations adopted by the City specifically in response to the federal program and federal regulations. As is clear from the face of the statute, Congress envisioned a partnership between federal and local entities:

> It is the policy of the United States to promote the general welfare of the Nation by employing its funds and credit, as provided in this chapter, to assist the several States and their political subdivisions to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income and, consistent with the objectives of this chapter, to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs.

**2.** The City's Amended Complaint raised these federal questions. *See* Amended Complaint, ¶¶ 19, 30, 35 and 40.

**3.** Contrary to defendants' assertions, this decision does not throw open the doors of the feder-

42 U.S.C. § 1437.[2] The federal government has a substantial interest in protecting the integrity of this partnership and in ensuring that local regulations designed both to implement federal policies and affect federal monies are respected. As in *West 14th Street, supra,* "the vindication of rights and definition of relationships *created by federal law* depends" on the construction and interpretation of a federal Act. *Id.* at 196 (emphasis in original). Without the federal statute and federal regulations, the right asserted by the City in this suit would never have existed. Apparently, the defendants at the same time hope to reap the benefits of the federal government's participation in the NSA program—namely, the tax exemptions, mortgage guarantees and rent subsidies made available—and to avoid being held accountable in a federal court.

Indeed, the defendants themselves at one time—if not now—recognized the federal issues and interests implicated by the City's suit. In their original brief before this Court, filed on November 20, 1985, the defendants described "this essentially Federal program ..." *See* Def.Mem. at 5, 8. The defendants described the original Notice of Funds, published by HPD, which explained that, *"in return for* certain federal and local financial assistance, developers would agree to provide a portion of their profits to a community group." *Id.* at 5 (emphasis added). They described as well their interest in a federally guaranteed mortgage and how they "requested Defendant City of New York to agree to [their Section 8 proposal] under this Federal program and provide local tax abatement." *Id.* As defendants knew in 1985, the federal interests and responsibilities in this area are broader and more comprehensive than defendants now argue, just as the federal and local roles are more interdependent.

For these reasons, the Court finds subject matter jurisdiction.[3]

al courthouse to every minor dispute the City may have with developers over a NSA program. As the Second Circuit made clear in *West 14th Street, supra,* there is no simple test for determining federal question jurisdiction. Rather, the inquiry must proceed on a case by case

### B. Interest on the Judgment:

■ In its Amended Complaint, the City requested, in addition to damages, interest. 28 U.S.C. § 1961 provides for post-judgment interest "on any money judgment in a civil case recovered in a district court ... Such interest shall be calculated from the date of the entry of the judgment at the rate allowed by State law." Sub-sections (b)(1) and (b)(6) of Fed.R.Civ.P. 60 provide for relief from a final judgment for "mistake, inadvertence, surprise or excusable neglect," and for "any other reason justifying relief from the operation of the judgment." The Court deems as mere inadvertence both the City's failure to provide for post-judgment interest in its proposed judgment submitted to this Court, and this Court's failure to note that oversight. Moreover, the Court deems it just to revise its original order to provide for such interest. Therefore, pursuant to § 1961, interest shall be paid by the defendants from the date of the original judgment—January 27, 1987—until full payment is made to the City at the rate of 9% per annum, as provided for under the applicable state law. *See* N.Y.C.P.L.R. § 5004.

The City's request for pre-judgment interest is not so easily handled. The City mistakenly seeks pre-judgment interest pursuant to § 5001 of the New York C.P.L.R.[4] A determination that the City cites the *wrong provision and does not even meet its criteria* does not, however, end the Court's inquiry. Although § 1961 makes no mention of pre-judgment interest, the statute nonetheless does not limit successful plaintiffs to interest from the date of their judgment. Rather,

> "whether to award prejudgment interest in cases arising under federal law has in the absence of a statutory directive been placed in the sound discretion of the district courts." ... Consistent with this general principle, we have repeatedly recognized the power of district courts to award pre-judgment interest ... [Defendants must present] persuasive reasons[ ] that would overcome our presumption in favor of pre-judgment interest.

*Waterside Ocean Navigation Co., Inc. v. International Navigation Ltd.*, 737 F.2d 150, 153–4 (2d Cir.1984) (citations omitted). Further, awards of pre-judgment interest "are governed by fundamental considerations of fairness." *Rolf v. Blyth, Eastman Dillon & Co.*, 637 F.2d 77, 87 (2d Cir.1980). And "[i]n these days in which all of us feel the effects of inflation, it is almost unnecessary to reiterate that only if such interest is awarded will a [party] wrongfully deprived of [its] money be made whole for the loss." *Waterside Ocean, supra* at 154.

In its original Memorandum and Order, this Court concluded that HPD notified the defendants as early as December 10, 1981 —five months after the closing—that the defendants were required to reach an agreement for the payment of at least $156,211 to a qualified community group,

---

basis. Here, defendants have attempted to deny one of their primary obligations under the federally funded program—namely, to return a certain amount of money to the community. Thus, the Court rejects the defendants' position that a finding of federal jurisdiction in this case will permit the City in the future "to litigate [in federal court] any enforcement of any aspect of a plan it created and any aspect of its local codes in any NSA area ..." Def. Reply Mem. at 6.

**4.** The federal courts look to that provision only when their jurisdiction is based on diversity of citzenship, and not on a federal question, as is the case here. *See Lee v. Joseph E. Seagram & Sons, Inc.*, 592 F.2d 39, 41 (2d Cir.1979). Moreover, sub-section (a) of that provision provides for pre-judgment interest only in certain actions:

Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

N.Y.C.P.L.R. § 5001(a). As the City itself emphasizes repeatedly, this Court has determined that this was *not* a contract dispute. *See* Pl. Mem. at 10 n. 8; Opinion at 9. Further, this was not an action over the title, possession or enjoyment of property. And finally, as is clear from the $156,211 judgment, this was not an action sounding in equity. Thus, the City's application for pre-judgment interest would fail under § 5001.

or to place that sum in an HPD-controlled escrow account. Mem. at 7. The City requests that interest be paid from January 2, 1982, which is six months after the project's initial closing and the latest date defendants' first payment could have come due under the City's guidelines. Bowie Aff. ¶ 10.

■ The defendants have offered no persuasive reasons to change the presumption in favor of pre-judgment interest. Indeed, any other result would be inequitable. As the City has explained: "[I]t is unfair to allow defendants to reap a windfall from their failure to comply with the City's regulations by keeping the fruits of use of the money they ought to have paid several years ago. To do so encourages defendants and other developers to postpone compliance as long as possible, without fear of penalty." Bowie Reply Aff. ¶ 3.

However, the Court does accept defendants' argument that pre-judgment interest should be awarded from the dates on which each payment was due, rather than from the date on which the *first* payment was due. A letter dated January 28, 1983, from HPD to Mr. Gilbert Wallach (Exhibit M to the original motion papers) indicates the existence of a schedule for full payment of the $156,211. The letter states that the first two payments—each for $31,241—were due on December 31, 1981 and December 31, 1982. It appears that three future payments of equal amounts were to be paid on December 31 of 1983, 1984 and 1985. The Court orders that interest be paid from the date each payment was due.

The Court directs the parties to settle an order within 7 days that reflects the schedule to which they originally agreed.

SO ORDERED.