**J.A. JONES CONSTRUCTION COMPANY AND DAIDONE ELECTRIC OF N.Y., INC., A JOINT VENTURE, Plaintiff,**

v.

**The CITY OF NEW YORK, Defendant.**

**No. 90 Civ. 4227 (MBM).**

United States District Court, S.D. New York.

Dec. 19, 1990.

Howard B. Levi, Kornstein Veisz & Wexler, New York City, for plaintiff.

Lewis S. Finkelman, Corp. Counsel, New York City, for City of New York.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff seeks a judgment in this court declaring its rights under a contract with the City of New York which incorporates federal regulations that define how to calculate additional payments for change orders and delays. Plaintiff argues that incorporation of these regulations in the contract makes this a case arising under the laws of the United States and thus gives this court jurisdiction over the dispute. However, for the reasons set forth below, the regulations in question create no federal rights for the plaintiff. Accordingly, and because there is no diversity of citizenship between the parties, the action must be dismissed for lack of subject-matter jurisdiction.

## I.

Plaintiff J.A. Jones Construction Co. and Daidone Electric Co. of N.Y., Inc. ("Jones"), a joint venture of a New York corporation and a North Carolina corporation, contracted in March 1986 with defendant, City of New York, to perform electrical construction work at the North River Water Pollution Control Project. The project was funded by a grant from the Environmental Protection Agency ("EPA") under the Clean Water Act ("CWA"), 33 U.S.C. § 1251–1376 (1986)—specifically § 1281, which authorizes the EPA "to make grants to any State, municipality, or intermunicipal or interstate agency for the construction of publicly owned treatment plants." During construction of the project, the City initiated various changes in the original plans ("change orders") and caused other delays in Jones' performance.

This action arises from a dispute over how to calculate additional amounts claimed by Jones for change orders and City-caused delays. The contract between Jones and the City is subject by its terms to a set of regulations promulgated by the EPA and contained in 40 CFR Part 33 entitled "Procurement Under Assistance Agreements" ("EPA procurement regulations"). Plaintiff contends that the EPA procurement regulations require that additional amounts for change orders be calculated pursuant to cost accounting principles contained in 41 CFR § 1–15.4 of the Federal Procurement Regulations and that amounts relating to City-caused delays be calculated under a model equitable adjustment clause contained in 40 CFR § 33.1010, subpart 5. Jones claims that a proper reading of the EPA procurement regulations mandates that these two provisions supersede any conflicting provisions elsewhere in the contract.

The City contends that Article 13 of the contract contains a waiver, permitted by the regulations, for any claims based on City-caused delays, and that any additional change order costs should be calculated under a formula set out in Article 26 of the contract because the EPA procurement regulations provide that the City's duties are governed by OMB Circular A–87, specifically applicable to local governments, rather than the Federal Procurement Regulations. Not surprisingly, as plaintiff interprets the EPA procurement regulations, it would be entitled to more money than it would get under clauses cited by the City.[1]

---

1. Article 1 of the contract between Jones and the City incorporates by reference a document entitled "The Advertisement and Information for Bidders, or Proposal for Bids." Section 24 of that document states, "[t]his procurement will be subject to regulations contained in 40 CFR Part 33." That part of the code of federal regulations, entitled "Procurement Under Assist-
ance Agreements," sets forth certain procurement requirements for recipients of grants from the EPA, including a provision that "*contractors and subcontractors must comply* with the federal cost principles contained in the Federal Procurement Regulations (41 CFR Section 1–15.2 and, *if appropriate,* Section 1–15.4) to determine allowable costs." 40 CFR § 33.275(d) (emphasis

Pursuant to the federal declaratory judgment statute, 28 U.S.C. § 2201, plaintiff has requested a judgment declaring (i) that the cost accounting principles contained in the Federal Procurement Regulations be applied in calculating reimbursements for change orders issued under the contract, and (ii) that defendant must construe the contract to incorporate the equitable adjustment clause contained in 40 CFR § 33.1030, subpart 5.

Defendant has brought several motions, including one to dismiss for lack of subject matter jurisdiction pursuant to Fed.R. Civ.P. 12(b)(1).[2]

## II.

Plaintiff's complaint alleges jurisdiction pursuant to both 28 U.S.C. § 2201, the federal declaratory judgment statute, and § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."

It is well settled that "federal jurisdiction cannot be based on the fact that a declaratory judgment is sought because the declaratory judgment statute does not expand the jurisdiction of the federal courts." *West 14th Street Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188, 194 (2d Cir.), *cert. denied*, 484 U.S. 850, 108 S.Ct. 151, 98 L.Ed.2d 107 (1987); *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 16, 103 S.Ct. 2841, 2850, 77 L.Ed.2d 420 (1983); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–2, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950).

There is no diversity of citizenship between the parties, so federal jurisdiction can be based only on 28 U.S.C. § 1331. Therefore, plaintiff's complaint must be dismissed unless it "arises under" federal law.

In determining whether a complaint arises under federal law, the claims must be examined in accordance with the well-pleaded-complaint rule, which requires that "federal jurisdiction ... be found from 'what necessarily appears in the plaintiff's statement of his own claim ..., unaided by anything alleged in anticipation of or avoidance of defenses which it is thought the defendant may interpose.'" *West 14th Street Commercial Corp*, 815 F.2d at 192 (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914)).

■ To determine whether a well-pleaded declaratory judgment complaint arises under federal law, a court must look beyond the fact allegations and, by identifying the substantive theories upon which plaintiff could have brought its action, determine whether there necessarily would be federal jurisdiction in a suit for coercive relief brought either by the declaratory defendant or the declaratory plaintiff, apart from any anticipated defenses. *See Franchise Tax Board*, 463 U.S. at 19, 103 S.Ct. at 2851; *West 14th Street Commercial Corp.*, 815 F.2d at 194–95; *Stone & Webster Engineering Corp. v. Ilsley*, 690 F.2d 323, 327–28 (2d Cir.1982), *aff'd*, 463

added). Section 1–15.4 of the federal procurement regulations provides for more categories of reimbursable costs than those specifically provided for by Article 26 of the contract ("Methods of Payment for Extra Work"), applicable to change orders.

Part 33 of 40 CFR also sets forth certain model contract clauses which "[r]ecipients must include, *when appropriate*." 40 CFR § 33.1030 (emphasis added). One of these model clauses provide that for "construction subagreements," recipients of EPA funding "shall make an adjustment for any increase in the costs of performance" resulting from any "unreasonable suspension, delay or interruption" that is the fault of the recipient. 40 CFR § 33.1030, subdivision 5(b). This clause is more generous than Article

13 of the contract ("Extension of Time") where Jones specifically agreed "to make no claim for damages for delay in the performance of this contract occasioned by any act or omission ... of the City."

2. Defendant also claims that plaintiff has (1) waived its claims by executing the contract and performing work thereunder without notifying the City of the claimed conflict between Articles 13 and 26 of the contract and provisions in the regulations, (2) failed to exhaust administrative remedies before the EPA, and (3) that the EPA, through its delegate New York State Department of Environmental Conservation, approved the contract provisions allegedly in conflict with EPA regulations.

U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983).

■ Applying the well-pleaded-complaint rule here, it is clear that plaintiff's claim is essentially one for breach of contract. A suit for coercive relief by either party necessarily would be a contract action. The central issue would be whether defendant breached its contract with plaintiff by failing to apply the appropriate cost accounting principles. Essentially, plaintiff contends that defendant has breached certain provisions which are incorporated into the contract through the operation of the EPA procurement regulations. On the other hand, defendant contends that although the regulations are applicable to the contract, defendant's contractual duties are governed by specific provisions in the written agreement between the parties. Other than breach of contract, plaintiff has not suggested a theory under which either it or the City could bring a coercive suit to enforce rights. Plaintiff has presented its claim as "in the nature of breach of contract," and the central issue as "whether certain federal regulations ... are ... mandatory or ... merely permissive." Plaintiff's Memorandum of Law at 1. However, plaintiff's only basis for enforcing the rights allegedly guaranteed by the EPA procurement regulations is the contract. Therefore, in determining whether plaintiff's claims arise under federal law, its declaratory action will be analyzed as a contract action whose resolution requires construction of federal regulations.

### III.

■ The Supreme Court has emphasized that "in exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 810, 106 S.Ct. 3229, 3233, 92 L.Ed.2d 650 (1986). The mere fact that a court necessarily must interpret federal law or federal regulations to determine the merits of a claim is insufficient to confer federal jurisdiction. *Merrell Dow,* 478 U.S. at 813,

106 S.Ct. at 3234; *Gully v. First Nat'l Bank,* 299 U.S. 109, 115, 57 S.Ct. 96, 99, 81 L.Ed. 70 (1936) ("Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit.").

■ Nor does even the mandatory incorporation of federal standards into a contract necessarily create federal jurisdiction in a contract action based on an alleged breach of those standards. *Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union, AFL–CIO–CLC,* 457 U.S. 15, 29, 102 S.Ct. 2202, 2210, 72 L.Ed.2d 639 (1982). In *Jackson,* a union sued a municipal transit authority for breach of both a collective bargaining agreement and a related "§ 13(c) agreement," which preserved transit workers' pre-existing collective bargaining rights. Such guarantee of pre-existing rights was required by § 13(c) of the Urban Mass Transportation Act of 1964, 49 U.S.C. § 1609(c), as a condition for the receipt by local governments of federal mass transit funds. The union argued that because the contract rights in the § 13(c) agreement were guaranteed by federal law, its complaint stated claims arising under federal law. The Court rejected that argument and held that determining federal jurisdiction in an action "to enforce contracts contemplated by federal statutes" turns on Congressional intent. After analyzing the legislative history of the statute, the Court held that there was no federal jurisdiction over the Union's claims because Congress did not "intend[ ] such contract actions to set forth federal, rather than state, claims." *Id.* at 21, 102 S.Ct. at 2206.

■ In the case at bar, plaintiff alleges that defendant has breached contractual provisions required by the EPA procurement regulations. Plaintiff does not contend that the federal regulations, or the Act under which they were promulgated, create independent of contract either an express or an implied right of action for violations of those provisions. Plaintiff's Opposition Memorandum at 7. The absence of any basis for such a claim independent of the contract is confirmed by applying the familiar test for determining wheth-

er there is an implied right of action in a federal statute or regulatory scheme. That test has four factors: (1) whether plaintiff is part of the class for whose special benefit the statute was passed; (2) any indicia of Congressional intent to create a private right of action; (3) whether a federal cause of action would further the underlying purpose of the legislative scheme; and (4) whether the plaintiff's cause of action is a subject traditionally relegated to state law. *See Merrell Dow,* 478 U.S. at 810–11, 106 S.Ct. at 3233; *California v. Sierra Club,* 451 U.S. 287, 293, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981); *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975).

■ Applying these four factors to this case demonstrates that the City's alleged violation of the EPA procurement regulations does not present a federal claim. These regulations appear to be designed primarily to protect the public treasury from excessive expenditures, rather than to protect private contractors whose agreements contain provisions not as generous as those available in the regulations. For example, the regulations provide that "[r]ecipients must assure that only fair and reasonable profits are paid to contractors," forbid "cost-plus-percentage-of-cost" types of agreements between recipients and contractors, and require recipients to conduct a cost analysis of all negotiated change orders or subagreements that exceed $10,-000. *See* 40 CFR §§ 33.235, 33.285 and 33.290. Even the equitable adjustment clause in 40 CFR § 33.1030, subpart 5, which allows an adjustment for added costs resulting from recipient-caused suspensions, delays or interruptions, sets a ceiling on additional costs by providing that no adjustment shall be made (1) to the extent performance would have been delayed by any other cause, (2) to the extent that an equitable adjustment is provided for or excluded elsewhere in the contract, and (3) to the extent a timely claim for adjustment is not made in writing.

As to the second factor, there is no indication that Congress intended these regulations to create a private right of action.

The EPA procurement regulations are management rules enacted pursuant to 33 U.S.C. § 1361(a), which gave the agency authority to promulgate regulations necessary for it to carry out its functions, one of which is the administration of grants for the construction of publicly owned treatment works. *See* 33 U.S.C. § 1281(g). Even assuming that EPA had the authority to create private federal rights of action, there is no indication that the procurement regulations were intended to establish any such rights, in addition to contract rights that can be protected in separate state-law breach of contract actions. One portion of the regulations creates an administrative protest process for challenging a grant "recipient's solicitation or award of a subagreement." 40 CFR § 33.1110(a). This protects the financial interests of parties that do *not* have a contractual relationship with a grant recipient from actions that violate the regulations. Without such a procedure, these parties would be unable to challenge procurement actions adverse to them and allegedly in violation of the regulations. However, contract parties such as Jones that wish to challenge a grant recipient's procurement actions do not need an administrative procedure or right of action under the regulations themselves, because a contract action is available.

A federal cause of action would not further the underlying purposes of the regulatory scheme. The EPA procurement regulations are designed to "rely heavily" on the procurement systems of recipients, *see* 48 Fed.Reg. 12,922 (1983), and those regulations state specifically in the first section, § 33.001(g) "Applicability and Scope of this Part," that "In the construction of treatment works program [*sic*] under the Clean Water Act …, it is EPA's policy to delegate determinations on individual projects to state agencies to the maximum extent possible." These statements, as well as the entire structure of 33 U.S.C. § 1281(g) (allowing grants to "any state, municipality, or intermunicipal or interstate agency for the construction of publicly owned treatment works") and the EPA procurement regulations governing those grants, reflect that this regulatory scheme seeks to

delegate procurement and contract determinations as much as possible to the local level.[3] Finally, in this case, the subject matter of plaintiff's cause of action, breach of a construction contract, is traditionally relegated to state law. This factor as well strongly supports that there is no federal right of action for violation of the procurement regulations. Therefore, there is no private right of action for violations of the EPA procurement regulations other than a right emanating from the contract. *See also Dan Caputo Co. v. Russian River County Sanitation Dist.,* 749 F.2d 571, 576 (9th Cir.1984) (finding that contractor had no private right of action against public entity under the Clean Water Act with respect to contractual dispute and reallocation of EPA grant funds allegedly in violation of regulations).

### IV.

The significance of the conclusion "that there is no private cause of action cannot be overstated." *Merrell Dow,* 478 U.S. at 812, 106 S.Ct. at 3234. This conclusion virtually mandates a finding that plaintiff's claims should not be in a federal court.

In *Merrell Dow,* plaintiffs brought a tort action alleging, *inter alia,* that the defendant drug company labeled its product in violation of the Federal Food, Drug, and Cosmetic Act (FDCA) thereby creating a rebuttable presumption of negligence. *Id.* at 805–06, 106 S.Ct. at 3230–31. After acknowledging language in several earlier cases, principally *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 199, 41 S.Ct. 243, 245, 65 L.Ed. 577 (1921) and *Franchise Tax Board,* 463 U.S. at 13, 103 S.Ct. at 2848, suggesting that federal jurisdiction is proper where the state law claim

necessarily requires construction of a federal provision or where the federal claim is "substantial," the Court noted that current analysis of arising under jurisdiction must apply recent limitations on inferring a private right of action where Congress is silent. After concluding that there was no federal cause of action for FDCA violations, the Court wrote that:

The significance of the necessary assumption that there is no private cause of action ... cannot be overstated. For the ultimate import of such a conclusion, as we have repeatedly emphasized, is that it would flout congressional intent to provide a private federal remedy for the violation of the federal statute. We think it would similarly flout, or at least undermine, congressional intent to conclude that the federal courts might nonetheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation of the federal statute is said to be a "rebuttable presumption" or a "proximate cause" under state law, rather than a federal action under federal law.

. . . .

We simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal jurisdiction.

*Id.* 478 U.S. at 812–14, 106 S.Ct. at 3234–35.

■ The holding in *Merrell Dow* governs plaintiff's breach of contract claim. Although some court will have to interpret

---

**3.** Plaintiff's reliance on 40 CFR § 33.115(b)(1), which allows the EPA to review whether procurement systems or procurement actions of recipients comply with federal regulations, for the proposition that all aspects of the procurement system are of "federal concern" is misplaced. The mere fact that a federal agency reserves the right to review the eventual disposition of federal funds hardly indicates that every dispute between a recipient such as the City of New York and a contractor such as Jones creates a federal right of action even if resolution

of the dispute requires interpretation of those regulations. *See Jackson,* 457 U.S. at 23–29, 102 S.Ct. at 2207–10. Plaintiff also relies on 40 CFR § 33.115(a), which reads "EPA will not substitute its judgment for that of the recipient *unless* the matter is primarily a Federal concern," to demonstrate a substantial federal interest in the type of dispute that underlies this action. (emphasis added) Contrary to plaintiff's analysis, this provision appears to show that disputes between contractors and recipients generally are *not* of federal concern.

the EPA procurement regulations in order to determine if defendant has breached contractual obligations, *Merrell Dow* teaches that the potential significance of regulations in deciding the outcome of a lawsuit is insufficient to confer federal jurisdiction where there is no private right of action for violations of the regulations themselves. *See Dillon v. Combs*, 895 F.2d 1175, 1177 (7th Cir.1990) (finding that federal jurisdiction was improper for claims alleging violation of federal statute where Congress did not create private right of action and where actions in state courts under state law provided "ample power" for parties to enforce federal statute); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1168 (5th Cir.1988) (existence of a "private, federal remedy ... [is] a necessary predicate to determining that the presence of a federal element in a state-created cause of action result[s] in that cause of action being one which ar[ises] under federal law"); *Utley v. Varian Associates, Inc.*, 811 F.2d 1279, 1283 (9th Cir.) ("Under *Merrell Dow*, if a federal law does not provide a private right of action, then a state law action based on its violation perforce does not raise a 'substantial federal question' sufficient to confer federal-question jurisdiction."), *cert. denied*, 484 U.S. 824, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987); *Foxrun Workshop, Ltd. v. Klone Mfg. Inc.*, 686 F.Supp. 86, 89 (S.D.N.Y.1988) (citing Merrell Dow for proposition that a "state law cause of action to enforce federal statutory right is not within federal question jurisdiction"); *Angela Cummings, Inc. v. Purolator Courier Corp.*, 670 F.Supp. 92, 94 (S.D.N.Y.1987) ("A federal statute that does not create or imply private rights of action does not present a federal question pursuant to 28 U.S.C. § 1331 on behalf of private individuals.").

█ *West 14th Street Commercial Corp*, 815 F.2d 188, upon which plaintiff relies heavily, is fully consistent with this conclusion. *West 14th Street* examined whether there was federal jurisdiction under provisions of the Condominium and Cooperative Abuse Relief Act, 15 U.S.C. §§ 3601–16 (1988), in a declaratory action seeking to void defendant's termination of certain leases. After concluding that plaintiffs "have a right of action expressly provided" under the Act, 815 F.2d at 194, the Court found also that even if plaintiffs had no express private right of action, federal jurisdiction was proper because "upon that Act's construction the vindication of rights and definition of relationships *created by federal law* depends." 815 F.2d at 196 (emphasis in original). The Court noted that there was "no meritorious contract action available" to the plaintiff, 815 F.2d at 195, and that a suit for coercive relief by the defendant would have necessarily depended on a right " 'conferred by federal law.' " *Id.* (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666, 94 S.Ct. 772, 776–777, 39 L.Ed.2d 73 (1974)). In the action before me, the rights of both plaintiff and defendant are created by their contract, which may incorporate federal regulations, rather than by operation of the federal regulations themselves; a suit for coercive relief by either side necessarily would seek enforcement of contractual obligations.

In *Merrell Dow*, the federal statute was incorporated by reference as a standard of conduct in a state negligence action. In this action, plaintiff asserts essentially that the EPA procurement regulations are incorporated by reference into the contract and that certain provisions in those regulations determine defendant's contractual duties and obligations. To provide a federal forum for this state law claim would "flout, or at least undermine, congressional intent" not to provide a private federal remedy in the regulations. *Merrell Dow*, 478 U.S. at 812, 106 S.Ct. at 3234.

Plaintiff's contention that its contract claims arise under federal law rests primarily on particular phrases in appellate cases which, when scrutinized, merely describe rather than define arising under jurisdiction. Plaintiff emphasizes language to the effect that jurisdiction is proper in cases where a state law claim "requires resolution of a *substantial* question of federal law in dispute between the parties." *Franchise Tax Board*, 463 U.S. at 13, 103 S.Ct. at 2848. (emphasis added). *See also West 14th Street*, 815 F.2d at 196. Jones then

argues that the federal issue in this case is "substantial" because the construction of the federal regulations at issue is "decisive to the parties' dispute." Plaintiff's Memorandum of Law at 12. However, as pointed out, *supra, Merrell Dow* held that the failure of Congress to provide for a private right of action compels a conclusion that the federal issue is not "substantial." 478 U.S. at 814, 106 S.Ct. at 3235. Furthermore, the broad language used by the Court in *Franchise Tax Board* must be read in light of the its holding that there was no federal jurisdiction even though the claim could not be decided without construing the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* 463 U.S. at 14, 103 S.Ct. at 2848. *See also Merrell Dow*, 478 U.S. at 809, 106 S.Ct. at 3233.

Plaintiff's reliance on *New York v. Rapgal Associates*, 703 F.Supp. 284 (S.D.N.Y. 1989) is also misplaced. An earlier decision in that action held specifically that "dealings between the parties ... created no contract between them." *New York v. Rapgal Associates*, 649 F.Supp. 1504, 1508 (S.D.N.Y.1986). Thus, the plaintiff's right to relief in that case was created by the regulations themselves. 703 F.Supp. at 287.

Additionally, apart from the failure of Congress to provide for a right of action, this dispute between a contractor and a municipal grant recipient over the proper method of calculating payments to the contractor for work on a local construction project does not present a "substantial" issue of federal law. As discussed above, the entire structure of the EPA procurement system demonstrates an intention to delegate procurement responsibility and management to the local level to the maximum extent possible. This conclusion is buttressed by a Delegation Agreement, dated December 26, 1978, entered into between the EPA Regional Administrator and the New York State Department of Environmental Conservation ("NYSDEC"), under which the EPA delegated to NYSDEC "responsibility to manage and administer the construction grants program." (Defendant's Affidavit, Exh. B.) This agreement covered procurement management of the North River Water Pollution Control Project from which the contract action emanates. Therefore, even if a private right of action is not a prerequisite for federal jurisdiction, the federal question is not sufficiently substantial for this contract action to arise under federal law. *See also Oliver v. Trunkline Gas Co.*, 796 F.2d 86, 89 (5th Cir.1986) ("we are aware of no cases in which any court ... has held that a *private* contract can give rise to federal-question jurisdiction simply by 'incorporating' some federal regulatory standard that would not have been binding on the parties by its own force").

A state court will have to determine the scope of the EPA Procurement Regulations in order to decide this case, but there is no doubt that that court will fulfill its "constitutional obligation ... to uphold federal law." *Allen v. McCurry*, 449 U.S. 90, 105, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980). Defendant's motion to dismiss under Rule 12(b)(1) is granted.

SO ORDERED.