**EVANSVILLE CEMENT FINISHERS, INC., Plaintiff,**

v.

**VILLAGE OF NEW HAVEN, ILLINOIS, Defendant.**

**Civ. No. 89–4194.**

United States District Court, S.D. Illinois, Benton Division.

June 28, 1991.

Patricia L. Dysart, Thompson & Mitchell, Belleville, Ill., for plaintiff.

Michael F. Dahlen, Feirich, Schoen, Mager & Green, Carbondale, Ill., for defendant.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This matter is before the Court on defendant Village of New Haven's (Village) motion to dismiss. This motion is well taken, and the Court concludes that the mandatory contract clauses set forth in the 1982 interim rule governing procurement actions taken by recipients of Environmental Protection Agency funds under the Clean Water Act are not incorporated into the contract between the Village and Evansville Cement Finishers, Inc.

The complaint filed in this case alleges that plaintiff Evansville Cement Finishers, Inc., (ECF) entered into a contract with the Village to construct sewage facilities. The plan for these facilities was prepared by Hunter H. Martin & Associates. The Village received partial funding for this project from the United States Environmental Protection Agency (EPA) under the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*

The complaint further alleges that, during the course of its performance of the construction contract, ECF encountered subsoil conditions which were materially different from those represented by the contract or bid specifications. Specifically, plaintiff alleges that the subsurface conditions included far more rock than anticipated, excessive ground water, and quicksand. All these conditions made ECF incur greater expenses. The complaint alleges that the Village orally authorized ECF to perform additional work due to the different subsoil conditions, and that the Village orally promised to pay ECF for the additional work. ECF is now seeking recovery on a variety of theories, ranging from breach of contract to negligent misrepresentation.

Hunter Martin and Associates and the Village filed motions to dismiss the complaint, arguing that this Court lacked subject matter jurisdiction over this case. This Court granted Hunter Martin's motion[1] and denied the Village's motion. *Evansville Cement Finishers, Inc. v. Village of*

---

1. ECF has filed a separate suit against Hunter Martin & Associates. *Evansville Cement Finishers, Inc. v. Hunter Martin & Associates, Inc.,* Civil No. 90-4049 (S.D.Ill.). The basis for jurisdiction in that suit is the diversity of citizenship of the parties.

*New Haven, Illinois, et al.*, Civil No. 89–4194 slip op. (S.D.Ill. Feb. 14, 1990) (Document 17). The Court held that Count I of the complaint stated a substantial federal question, and therefore jurisdiction existed under 28 U.S.C. § 1331. The Court agreed to exercise pendent jurisdiction over the remaining counts of the complaint against the Village. The Court cautioned that "should the federal law claim be dismissed, this court reserves the right to reconsider whether it has pendent jurisdiction." *Evansville Cement Finishers, Inc.*, slip op. at 4.

The Village has now moved to dismiss Count I of the complaint on the merits. Count I of the complaint is titled "Breach of Contract and Federal Regulations." The allegations of Count I are that the contract entered into between Evansville Cement and the Village was subject to the regulations promulgated by the EPA as Part 33 of 40 Code of Federal Regulations, 40 C.F.R. §§ 33.001–33.1145. These regulations include model clauses for agreements made for projects partly funded by the EPA. 40 C.F.R. § 33.1030. ECF alleges that the regulations in effect at the time this contract was entered into require the contract to include provisions for oral modifications of the contract and for an adjustment in the contract price if the specifications given for the project were defective. 47 Fed.Reg. 20,474, 20,483 (1982). The contract does incorporate provisions required by the EPA relating to adjustments in the contract price. Exhibit B to ECF's Motion, pp. EPA–2, EPA–12. The provisions attached to the contract, however, are drawn from a later set of regulations. *See* 48 Fed.Reg. 12,922 *et seq.* (1983). The provisions attached to the contract provide for written modifications of the contract only. 48 Fed.Reg. 12,926 (1983).

With regard to Count I, ECF's theory of recovery is that the EPA regulations governing procurements by recipients of EPA funds are automatically incorporated into each such contract. ECF further argues that the interim rules contained in 47 Fed.Reg. 20,474 (1982) apply to this contract, not the final rules contained in 48 Fed.Reg. 12,922 (1983). Therefore, the interim rules are incorporated into the contract, despite the fact that the parties attached to the contract and expressly incorporated the final rules.

ECF's legal theory consists of two prongs. The first is that EPA regulations are automatically included in each procurement contract entered into by a recipient of EPA grant money. The second is that the interim final rules applied to the contract to the exclusion of the final rules. Since the Court concludes that the EPA regulations at issue are not automatically included in each procurement contract entered into by a recipient of EPA grant money, it does not have occasion to determine whether the interim final rules or the final rules applied to the contract.

■ This case involves two contracts. The first is the grant by the EPA to the Village for the construction of the sewage treatment facility. *See* 33 U.S.C. § 1283(a) (grant is deemed a contractual obligation of the United States). The regulations promulgated by the EPA are incorporated in this contract. *United States v. Bills*, 822 F.2d 373, 377 (3d Cir.1987); *but see Heritage Bank & Trust Co. v. Abdnor*, 906 F.2d 292, 302 n. 10 (7th Cir.1990) (clause which states that the contract is subject to present and future regulations should not be interpreted to mean that every agency regulation, no matter how trivial, is incorporated in contract). If the Village had failed to include provisions required by the regulations in its contracts for the construction of the sewage treatment facility, the EPA would have a remedy.

■ The Village's obligation to include the EPA provisions in the contract between the Village and ECF derives from its contract for the grant money from the EPA. In order for these provisions to be automatically included in the contract, ECF must show that the provisions were intended for its benefit. In other words, ECF must show that it is a third party beneficiary of the EPA regulations. A beneficiary is an intended beneficiary of the promise if recognition of a right to performance in the beneficiary is appropriate to effectuate the

intention of the parties and either the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intended to give the beneficiary the benefit of the promise. Restatement (Second) of Contracts § 302 (1981); *see also* III E.A. Farnsworth, *Farnsworth on Contracts* § 10.3 at 13 (1990). ECF does not satisfy either part of the test for an intended beneficiary.

It was not the intention of the parties in requiring the contractual provisions of 40 C.F.R. § 33.1030 to be included in all procurement contracts to allow additional claims by the contractor. "These regulations appear to be designed primarily to protect the public treasury from excessive expenditures, rather than to protect private contractors whose agreements contain provisions not as generous as those available in the regulations." *J.A. Jones Construction Co. v. City of New York*, 753 F.Supp. 497, 502 (S.D.N.Y.1990)[2]. Allowing a contractor to recover damages based on provisions not expressly included in the contract would not serve to effectuate the intent of the parties to safeguard the public treasury from excessive expenditures.

ECF does not meet the second part of the test for an intended beneficiary either. The performance of the grant conditions would not satisfy an obligation by the Village to pay ECF money. The obligation to pay the equitable adjustment (if such an obligation exists) arose *after* the grant to the Village. Thus, it cannot be said that the Village received the EPA grant to pay a debt owed to ECF.

Nor did the EPA and the Village intend to give ECF the benefit of the grant. The purpose of the grant was "to require and to assist the development and implementation of waste treatment management plan and practices...." 33 U.S.C. § 1281(a). The Village did not receive the grant to provide more business for contractors such as ECF.

ECF is not an intended beneficiary of the EPA grant. Therefore, it could not recover as a third party beneficiary of the grant contract. Since the obligation to include the provisions of 40 C.F.R. § 33.1030 is the result of the contract between the EPA and the Village, ECF cannot claim that those provisions are implicitly incorporated in its contract with the Village.

■ Even if ECF were the intended beneficiary of the clauses relating to equitable adjustments, the Court would still be compelled to dismiss Count I. Under the EPA regulations, the Village was obliged to include the model subagreement provisions "or their equivalent" in each contract governed by the regulations. 40 C.F.R. § 33.1030. Under the interim rules, change orders resulting in equitable adjustments to the contract price were to be either written or oral. The contract allows only written adjustments. Requiring a written change order is the equivalent of requiring a written or oral change order, since the interim rules allow written orders.

Allowing a grant recipient some discretion in the drafting of the subagreement provisions is the crucial distinction between these regulations and the regulations at issue in *Lisbon Contractors, Inc. v. Miami–Dade Water and Sewer Authority*, 537 F.Supp. 175 , (S.D.Fla.1982). In *Lisbon Contractors*, the recipient of EPA funding, WASA, filed a third-party claim against the engineering firm which performed soil quality tests. The contract with the engineering firm was governed by regulations located in Part 35 of 40 Code of Federal Regulations. Each consulting engineering contract under that part "must include the provisions set forth in Appendix C–1 to this subpart." 40 C.F.R. § 35–937–9(c). The EPA required that the regulations be included word-for-word in contracts under Part 35. Under Part 33, the recipient of EPA grants is given some discretion to

---

**2.** In *J.A. Jones*, the plaintiff, a contractor with the recipient of grants under the Clean Water Act, made essentially the same argument as ECF. The *J.A. Jones* court dismissed the suit, finding that no substantial federal question had been presented. Although this Court disagrees with *J.A. Jones* on the jurisdictional question, it is in full agreement that no private cause of action exists in favor of the contractor under these EPA regulations. *J.A. Jones*, 753 F.Supp. at 501–503.

change the wording of the subagreement provisions. Even if ECF is an intended beneficiary of the regulations, the intended benefit is limited to the model subagreement provisions "or their equivalent". ECF has received the full intended benefit, and cannot claim it is entitled to more.

To the extent that *Lisbon Contractors* holds that the EPA regulations are included in every contract made under an EPA grant, it is unpersuasive[3]. The discussion of this issue in *Lisbon Contractors* is brief:

> In addition we find that WASA relies specifically upon a contractual right of recovery against the third party defendant which is found in the United States Environmental Protection Agency Assisted Contract in Required Provision 2 entitled, "Responsibility of the Engineer" (Appendix C–1, 40 CFR, Part 35, Subpart E). WASA alleges that this provision "became part of the Engineer's Contract by virtue of the requirements of 40 CFR § 35.937–9 and paragraph D of Appendix D to 40 CFR Part 35, Subpart E." The applicable section of the CFR, Required Provisions, Construction Contracts (Appendix C–1) states that in the case of breaches, they may be decided "in a court of competent jurisdiction". We find that WASA as third party plaintiff does state a cause of action under the provisions of the cited Code of Federal Regulations, which is applicable to WASA as an assisted governmental entity, and therefore the Motion to Dismiss the Third Party Complaint is denied.

*Lisbon Contractors*, 537 F.Supp. at 178.

It is impossible to determine what issues were presented to the district court for decision in *Lisbon Contractors*. It may very well be that the engineering firm did not contest that the regulations were incorporated in its contract. Support for this possibility is found in the reasoning of *Lisbon Contractors*. The court based its ruling that WASA stated a cause of action on a regulations which allowed a breach of the contract to be decided in a court of competent jurisdiction. This indicates that the engineering firm was attempting to argue that WASA's only remedies were administrative. Moreover, there is no connection between allowing a breach of contract to be decided in a court of competent jurisdiction and the conclusion that regulations are automatically included in a contract. *Lisbon Contractors* is simply unpersuasive authority for ECF's position.

Having determined that Count I fails to state a cause of action, the Court must now consider whether it will exercise pendent jurisdiction over the remaining, purely state law claims. The exercise of federal jurisdiction over purely state law claims in this instance is not advisable, and the Court in its discretion refuses to exercise pendent jurisdiction over these claims. *See Leahy v. Board of Trustees of Community College District No. 508*, 912 F.2d 917, 923 (7th Cir.1990) (district acts well within its discretion in dismissing state law claims after dismissing federal claim). The entire complaint, therefore, must be dismissed.

Defendant's motion (Document 22) is GRANTED and the complaint is DISMISSED. All other pending motions are DENIED AS MOOT.

IT IS SO ORDERED.

---

**3.** ECF cites to one paragraph in *Lisbon Contractors* no less than thirteen times in its response to the motion to dismiss. Mere repetition of a cryptic reference in a district court opinion does not make the issue "well settled", as ECF argues.