895 F.2d 1175
 RICO Bus.Disp.Guide 7416
 John J. DILLON III, Commissioner of the Department of
Insurance of the State of Indiana, and the
Department of Insurance of the State of
Indiana, Plaintiffs-Appellees,
v.
Ted Allen COMBS, individually and as President of Medical
Liability Purchasing Group, Inc., of Indiana, and
Medical Liability Purchasing Group,
Inc., of Indiana, Defendants-Appellants.
 No. 89-2550.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 26, 1990.
Decided Feb. 15, 1990.
Rehearing and Rehearing En Banc Denied April 3, 1990.
 
 Terry G. Duga (argued), Dist. Atty. Gen., Office of Atty. Gen., Indianapolis, Ind., for plaintiffs-appellees.
 James L. Petersen, Donald M. Snemis, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendants-appellants.
 Before WOOD, Jr., FLAUM and EASTERBROOK, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 Concerned that state laws frustrated the formation of "purchasing groups" to serve as intermediaries in the insurance business, Congress enacted the Product Liability Risk Retention Act of 1981, Pub.L. 97-45, 95 Stat. 949, 15 U.S.C. Secs. 3901-06. This statute overrides the privilege states otherwise enjoy under the McCarran-Ferguson Act to regulate all aspects of the insurance business. Section 3903 exempts most "purchasing groups" (that is, middlemen between clients and insurers) from state regulation. Many an exemption has a catch. In 1986 Congress concluded that the original bill went too far, and while making other changes the legislature added Sec. 3903(f), which provides:
 
 
 2
 A purchasing group may not purchase insurance from a risk retention group [i.e., an underwriter] that is not chartered in a State or from an insurer not admitted in the State in which the purchasing group is located, unless the purchase is effected through a licensed agent or broker acting pursuant to the surplus lines laws and regulations of such State.
 
 
 3
 Pub.L. 99-563, 100 Stat. 3178. "Surplus lines laws" refer to assigned risk pools, and the principal function of Sec. 3903(f) is to require a purchasing group that does not use an underwriter licensed in the state to employ the same procedures--including registering as an agent or broker, or placing insurance through one--as other assigned risk intermediaries.
 
 
 4
 Indiana believes that Ted Allen Combs and his Medical Liability Purchasing Group, Inc., of Indiana, are violating both state law and Sec. 3903(f) by soliciting purchases of medical malpractice insurance without using "a licensed agent or broker acting pursuant to [Indiana's] surplus lines laws". Combs holds a license to sell insurance in Indiana. He tried to register to sell surplus lines insurance, but state officials turned him down on the ground that no one may sell surplus lines insurance for medical malpractice in Indiana, because that state has its own assigned risk pool. Because the state's pool accepts all applicants, Indiana is of the view that there is no need for private surplus lines agents or brokers. Combs responds that this approach would make hash of the general rule in Sec. 3903(a)(1), (8) that purchasing groups are exempt from state laws that "prohibit the establishment of a purchasing group" or "otherwise discriminate against a purchasing group". Indiana told Combs and his firm to stop soliciting. They ignored the demand, and Indiana sued. Indiana argued, and the district court found, that Combs and his firm not only are selling without the necessary surplus lines agent but also are perpetrating a fraud, representing that they place policies with reputable insurers licensed in the United States when all the business went to Casualty Assurance Risk Insurance Brokerage Company, an affiliated enterprise (run by Combs' uncle) incorporated in Guam and not licensed to underwrite in any state. The district judge froze the defendants' funds and ordered them to stop soliciting business in every state.
 
 
 5
 The only issue we need decide is whether there is jurisdiction. Indiana invoked federal-question jurisdiction, 28 U.S.C. Sec. 1331, on the theory that Combs and firm are "violating" Sec. 3903(f) as well as state law. It is far from clear to us that Sec. 3903(f) contains a rule that could be "violated", as opposed to limits on the scope of the preemption established by the rest of Sec. 3903. Despite the mandatory language of Sec. 3903(f), the section as a whole (indeed, the statute as a whole) is designed to preempt state laws that hamper purchasing and risk retention groups. Everyone assumed that if preemption were unavailable, state law would govern. Indiana has a law much like Sec. 3903(f). See Ind.Code Sec. 27-7-10-27(a). It concedes that it could have filed this suit in state court and obtained personal jurisdiction over both defendants. If federal preemption fails, the legal obligations are established by state law, and there is no federal question. See Franchise Tax Board v. Laborers Vacation Trust, 463 U.S. 1, 27-28, 103 S.Ct. 2841, 2855-56, 77 L.Ed.2d 420 (1983); Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 108 S.Ct. 2166, 2173-75, 100 L.Ed.2d 811 (1988). If, however, Sec. 3903(f) establishes an independent obligation, then there might be jurisdiction under Sec. 1331 even though state law also proscribes the same acts.
 
 
 6
 We need not decide whether Sec. 3903(f) imposes legal obligations (as opposed to delimiting the extent of preemption). A federal rule of decision is necessary but not sufficient for federal jurisdiction. There must also be a right of action to enforce that rule. Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 807-12, 106 S.Ct. 3229, 3231-34, 92 L.Ed.2d 650 (1986). Section 1331 does not furnish it. Unless the defendant is a state actor, so that 42 U.S.C. Sec. 1983 may supply the right of action, see Golden State Transit Corp. v. Los Angeles, --- U.S. ----, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), the entitlement to enforce the federal rule generally must be found within the statute in question. Here Indiana comes up short: the Risk Retention Act does not create a private right to enforce Sec. 3903(f). Quite the contrary, Sec. 3903(g) says that "[n]othing in this chapter shall be construed to affect the authority of any State to bring an action in any Federal or State court." See also Sec. 3903(e). A law that does not "affect" the ability of a state to sue hardly creates a right of action. Another part of the Risk Retention Act, 15 U.S.C. Sec. 3906, added in 1986, does create a federal right of action. Section 3906 says that a district court may enjoin a risk retention group from underwriting insurance if "such group is in hazardous financial condition." Combs' firm is a purchasing group, not a risk retention group. The express right of action in Sec. 3906 stands in contrast to the no-effect clause of Sec. 3903(g). What remains is the conclusion that there is no private right of action to enforce Sec. 3903(f) in federal court.
 
 
 7
 Indiana believes that Combs and firm committed fraud by using the mails, and some federal anti-fraud laws contain express rights of action. Prominent among these is the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Sec. 1964. Indiana does not contend, however, that it is a victim of fraud, and RICO does not authorize a state to obtain relief on account of a fraud practiced against its residents. Illinois v. Life of Mid-America Insurance Co., 805 F.2d 763 (7th Cir.1986); New York v. Seneci, 817 F.2d 1015 (2d Cir.1987). RICO allows suits by the federal government, Sec. 1964(b), but otherwise only by persons injured in their "business or property", Sec. 1964(c), a phrase that does not include sovereign or derivative interests. Hawaii v. Standard Oil Co., 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972); cf. Carter v. Berger, 777 F.2d 1173 (7th Cir.1985). A state has its own laws and ample access to its own courts, through which it may protect its residents from fraud. No other express right of action comes to mind (the state suggests none), which leaves us in the usual position that when Congress did not enact a right of action, there is no federal jurisdiction.
 
 
 8
 Cases such as Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), hold open the possibility that clear legislative history, with statutory language creating personal entitlements, may create a right of action even though the statute is silent. Section 3903 is a prohibitory rule, not a statute creating entitlements. Compare Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), with Touche Ross & Co. v. Redington, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Any entitlements would belong to those who seek to purchase insurance, not to state regulatory agencies. The Risk Retention Act as a whole is designed to throttle the states, not to empower them. And the legislative history is silent. Committee reports describe the substance of Sec. 3903(f) without hinting that the rule would be enforceable in federal litigation. H.R.Rep. No. 99-865, 99th Cong., 2d Sess. 17 (1986), U.S.Code Cong. & Admin.News 1986, 5303, 5314. Compare Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), with Karahalios v. National Federation of Federal Employees, --- U.S. ----, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989).
 
 
 9
 Text, structure, and history of Sec. 3903(f) all point to nonenforcement in federal court. States possess ample power to enforce in their own courts not only the principles of state law (to the extent they survive preemption) but also anything Sec. 3903(f) adds to state rules. The judgment of the district court is vacated, and the case is remanded with instructions to dismiss the complaint for want of jurisdiction.