## In re GRAND JURY INVESTIGATION.

### STATE OF MISSOURI,
**Plaintiff–Appellee,**

v.

### W.E.R., Defendant–Appellant.

### STATE OF MISSOURI,
**Plaintiff–Appellee,**

v.

### R & R, Defendant–Appellant.

### STATE OF MISSOURI,
**Plaintiff–Appellee,**

v.

### S.K.R., Defendant–Appellant.

Nos. 94–3241 to 94–3243.

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1995.

Decided May 5, 1995.

---

352

Appellant W.E.R. in No. 94–3241, pro se.

Susan Kreher Roach, Chesterfield, MO, for appellant R & R in No. 94–3242 and S.K.R. in No. 94–3243.

John R. Munich, Jefferson City, MO, for appellee.

Before BEAM, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MURPHY, Circuit Judge.

DIANA E. MURPHY, Circuit Judge.

These appeals arise from an order of the district court[1] granting a petition of the State of Missouri for access to certain material related to a grand jury investigation in the Western District of Missouri. The state petitioned under Federal Rule of Criminal Procedure 6(e)(3)(C)(i) for access to various documents and government agents to assist it in pursuing a civil action it brought in the Eastern District of Missouri. Appellants W.E.R., S.K.R., and R & R are defendants in the civil case, and they intervened in the district court to oppose the petition and to move for its dismissal. We affirm.

Grand jury materials are protected under the law, and their disclosure generally is not allowed, Fed.R.Crim.P. 6(e)(2), but certain exceptions exist. The district court found that disclosure here was appropriate as being "preliminarily to or in connection with a judicial proceeding." Fed.R.Crim.P. 6(e)(3)(C)(i).

In the pending civil case the state seeks to recover funds that were misappropriated from the Second Injury Fund, a state-administered worker's compensation fund. The state's complaint names thirteen defendants, including appellants, and has six claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., and eleven claims under state law. One of the state law claims alleges that W.E.R. fraudulently transferred misappropriated funds to S.K.R., his wife. The state also claims that S.K.R. is liable to the state under partnership principles because she and W.E.R. allegedly practiced law together. The state claimed in its petition for access that the requested materials would aid in its determination of the liability of each of the civil defendants.

The materials sought are from a grand jury investigation which ended in August 1993 and which focused on a scheme in which supporters of the state attorney general received excessive settlement payments from the Second Injury Fund in return for contributions to his campaign. W.E.R. approached potential donors and arranged for payments to them. The attorney general waived indictment and pleaded guilty to an information, although he denied involvement in the fund scheme. W.E.R. and several other participants pleaded guilty to charges arising from the scheme.

The petition of the state specifically requested access to the following:

1. Any correspondence to or from the attorney general, W.E.R., and one other convicted participant regarding the Second Injury Fund or contributions to the state attorney general. This category also specifically includes memoranda authored by a number of other individuals, including S.K.R.

2. Interview notes, summaries, and affidavits, with the exception of notes or summaries regarding witness testimony before the grand jury.

3. Notes, summaries, and charts regarding settlement payments made from the Second Injury Fund and contributions to the state attorney general, and the interrelationship between the two.

4. Records, lists, computer files, and reports regarding contributions to the state attorney general.

5. Reports of statistical information or actual case files obtained from the Missouri Division of Worker's Compensation, which administers the Second Injury Fund.

6. Access to the government agents who assisted in the grand jury investigation on condition that they not be asked about actual testimony before the grand jury.

The district court found that at least some of the materials requested by the state were "matters occurring before the grand jury" within the meaning of Rule 6(e)(2), but that they could be disclosed under Rule 6(e)(3)(C)(i).

 The purpose of Rule 6(e)(2) is to protect the inner workings of the grand jury.

---

**1.** The Honorable Russell G. Clark, Senior United States District Judge for the Western District of Missouri.

The more a document reveals about that work, the greater the protection it receives under the rule. *See In re Grand Jury Proceedings Relative to Perl,* 838 F.2d 304, 306–07 (8th Cir.1988). The materials sought by the state vary in their nature. For example, the letters written by participants in the scheme were generated independently of the grand jury and therefore reveal little about its investigation other than that they were available to the grand jury which may have considered them; they are entitled to diminished protection under the rule. *Id.* at 307. Charts and summaries may reveal somewhat more about what the grand jury considered, but they were prepared by government attorneys or agents and were not the work product of the grand jury. The state is not requesting grand jury minutes or witness transcripts, which are entitled to the greatest protection under Rule 6(e). *Id.* at 306. The requested materials therefore fall along a spectrum and warrant different levels of protection,. but none reveal much about the grand jury's inner workings.

■ A reduced showing of particularized need is required for documents which are entitled to lesser protection under the rule. *Perl,* 838 F.2d at 307. This requires a showing that the material is necessary to avoid "a possible injustice in another proceeding," that "the need for disclosure is greater than the need for continued secrecy," and that the disclosure request is tailored to include only necessary materials. *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979). The decision to allow disclosure is entrusted to the substantial discretion of the district court, which must weigh the circumstances of each case. The district court will be reversed only if it has abused that discretion. *Id.* at 223, 99 S.Ct. at 1675.

■ Appellants argue that the state's showing of particularized need was inadequate and that the district court abused its discretion in allowing disclosure. They first contend that no injustice will result in the civil case if the information is not disclosed,

claiming that the district court incorrectly relied on cost savings as a rationale for disclosure. Cost savings can be a valid consideration, however. *See United States v. John Doe, Inc.,* 481 U.S. 102, 115–16, 107 S.Ct. 1656, 1664, 95 L.Ed.2d 94 (1987). The district court also found that the materials are needed for the development of the civil case. The record indicates that access to the materials could aid substantially in the state's preparation of its case, not only saving time and money but also allowing more thorough discovery.[2] For example, the state contends that the grand jury is in possession of the only copies of some documents. One of the prosecutors who assisted in the grand jury investigation also testified by declaration that the requested materials would be beneficial to the state. This combination of factors is sufficient to show that disclosure is necessary to avoid possible injustice. *See Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674.

■ The second requirement of the *Douglas Oil* test is that the need for access must outweigh the interest in preserving the secrecy of the grand jury's inner workings. The district court found that the value of continued secrecy was minimal and that disclosure was in the public interest. Appellants argue that this was an abuse of discretion for several reasons. First, they contend that the district court improperly considered the fact that the grand jury had concluded its investigation in August 1993. The end of a grand jury inquiry reduces the interests in grand jury secrecy, however. *In re Grand Jury Proceedings Relative to Perl,* 838 F.2d 304, 307 (8th Cir.1988). Here, the grand jury concluded its work almost two years ago and issued a number of indictments. The state mentioned at oral argument that some grand jury materials, including transcripts, became public at the attorney general's eleven-day sentencing hearing. The interests in secrecy are reduced further by numerous media reports with details of the scheme and the names of its participants, including the defendants in the civil case. The need for continued secrecy is therefore minimal.

---

**2.** The state also suggests that it is concerned that some of the civil defendants who still face possible state criminal charges might invoke their

right against self-incrimination and refuse to comply with discovery requests. At this point that concern is only speculation, however.

Consideration of the five reasons given by the Supreme Court in *Douglas Oil* for maintaining grand jury secrecy supports this conclusion. 441 U.S. at 219 n. 10, 99 S.Ct. at 1673 n. 10. Since the investigation is over, the grand jurors are no longer involved and cannot be influenced or intimidated. There is also no danger that the subjects of the grand jury inquiry will flee. Because the state has carefully excluded from its request any information regarding witnesses who actually testified before the grand jury, there is little reason to be concerned that disclosure might cause witnesses in this or future grand jury investigations to fear retribution. Finally, disclosure to the state poses relatively little danger to personal reputations. The grand jury has returned its indictments. The civil case has already made public the alleged involvement of the defendants who were not indicted. The grand jury materials can therefore do little but add specifics to already well known general allegations. The state's need for the grand jury materials outweighs the reduced importance of secrecy.

The appellants also argue that the state's request was not tailored to include only necessary materials. They argue that the district court should have imposed conditions of disclosure similar to those in *United States v. Armco Steel Corp.*, 458 F.Supp. 784 (W.D.Mo.1978). In *Armco*, the Justice Department was willing to support disclosure if the civil plaintiffs seeking it would agree to a number of conditions, which they did. Federal officials here have not conditioned their support of disclosure, however, and the state's request is not overly broad. The state's petition appears limited to materials which are needed in the civil case. It explicitly avoided asking for information which would reveal actual testimony before the grand jury, such as witness notes and summaries. The enumerated requests also appear highly relevant to the state's articulated purpose of determining the liability of each defendant in the civil action.

Because the state demonstrated sufficient particularized need for the categories of requested materials, we find no abuse of discretion by the district court in granting the petition for access. Although the need for the requested materials is not as urgent as in some Rule 6(e) cases, the need for secrecy is greatly diminished. Disclosure here is consistent with the policies which underlie Rule 6(e).

■ Appellants raise several other arguments on appeal. First, they claim that the district court erred by not granting their motion for a hearing on the petition for access. Rule 6(e)(3)(D) requires that the parties to the proceeding for which grand jury materials are sought be given "a reasonable opportunity to appear and be heard." Fed. R.Crim.P. 6(e)(3)(D). Appellants contend that the district court was therefore required to grant a hearing. The word "heard" does not warrant such a literal reading, however. All parties had the opportunity fully to brief the issues regarding access. Although a hearing may sometimes be necessary to explore the ramifications of granting access, appellants cite no authority holding that Rule 6(e)(3)(D) requires one under all circumstances. As with other issues under the rule, the decision to hold a hearing should be entrusted to the discretion of the district court. That discretion was not abused here.

■ Appellants also argue that they were denied due process because they did not have an opportunity to confront adverse witnesses, especially the Assistant United States Attorney who submitted a sealed declaration to the court on the propriety of disclosure. They also argue his declaration should not have been considered by the court; it was "irrelevant and improper."

■ Justice Department attorneys are not adverse witnesses in a traditional sense. Their duty is to protect grand jury secrecy where required. *See Illinois v. Sarbaugh*, 552 F.2d 768, 777 n. 14 (7th Cir.), *cert. denied, J.L. Simmons Co. v. Illinois*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977). The fact that the prosecutor took a position contrary to that of the appellants does not transform his role into that of an adverse witness. The Supreme Court has acknowledged that such attorneys can play an important role in assessing the prudence of disclosure. *Douglas Oil*, 441 U.S. at 226, 99 S.Ct. at 1676. In exercising their judgment, they

must necessarily consider sensitive information, including for example which materials were examined by the grand jury. Sealed submissions ensure that district courts receive full and frank evaluations by the attorneys who participate in grand jury investigations.[3]

■■■ The appellants argue next that the state's petition should have been transferred to the Eastern District of Missouri where the civil action is pending. Rule 6(e)(3)(E) provides for transfer of a petition for access to the court where the ongoing judicial proceeding is located unless the court presented with the petition "can reasonably obtain sufficient knowledge of the proceeding to determine whether disclosure is proper." *See also Douglas Oil*, 441 U.S. at 230–31, 99 S.Ct. at 1678–79 (1979). The situation here is unlike that in *Douglas Oil* where transfer was appropriate. There the court in which a civil antitrust action was pending, rather than the court supervising the grand jury, was more likely to have noticed "important differences" between the allegations in the indictment and the "contours" of the cause of action in the civil case. *Id.* at 229, 99 S.Ct. at 1678. It is clear from the complaint in this case that the criminal and civil actions are closely related. The state is the victim under both the criminal and civil theories, the elements of the causes of action are very similar, and the acts giving rise to criminal liability are the precise acts which will lead to civil liability if the state is successful. The parties informed the district court of the status of the civil litigation, and appellants filed several motions to dismiss similar to some pending in the Eastern District. We conclude that the district court had sufficient knowledge to determine whether disclosure of the requested materials was proper.

Appellants also appeal from the denial of their motions to dismiss the petition for access. They assert that the civil complaint was not pleaded with sufficient particularity under Federal Rule of Civil Procedure 9(b) and that the RICO claims are inadequate in several respects. The district court presiding over the civil action recently denied appellants' motions to dismiss the civil complaint based on the same grounds. *Missouri v. Roussin*, No. 4:93CV2633–DJS, slip. op. at 9, 20 (E.D.Mo. April 10, 1995). That action is ongoing, and the petition for access to grand jury materials is "in connection with [that] judicial proceeding." Fed.R.Crim.P. 6(e)(3)(C)(i). Appellants have not shown that the district court erred in denying their motions to dismiss the petition.

■■■ One issue raised in the motion to dismiss the petition for access warrants further discussion; that is the issue of standing. Appellants argue that the state was not injured and therefore does not have standing to bring the civil action, but even if it did, the state should not have brought the action in its own name. They argue that the state may therefore not petition for access and that the district court should have dismissed the petition.

■■■ In support of their claim that the state did not suffer an injury sufficient to confer standing, appellants cite two cases from the Seventh Circuit in which RICO actions brought by state governments were dismissed. *Dillon v. Combs*, 895 F.2d 1175 (7th Cir.1990); *People of State of Illinois v. Life of Mid–America Insurance Co.*, 805 F.2d 763 (7th Cir.1986). *Dillon* and *Mid–America Insurance* were each brought by a state on behalf of its citizens who allegedly had been injured. *Dillon*, 895 F.2d at 1177, *Mid–America Insurance*, 805 F.2d at 766. In this case, however, Missouri alleges direct injury to itself, not to its residents or consumers, because funds were misappropriated

---

**3.** Appellants' citation to *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), is unpersuasive. They claim that *Wolff* supports their view that "[t]he right to confront and cross-examine witnesses is a fundamental aspect of procedural due process and such right applies not only in criminal proceedings but also in non-criminal proceedings, including administrative and quasi-judicial proceedings." Appellants Brief at 34. The holding in *Wolff* was that prison inmates did not have a right to cross-examine witnesses at disciplinary hearings because of institutional concerns regarding security. 418 U.S. at 567–69, 94 S.Ct. at 2980–81. Petitions for access to grand jury materials present analogous concerns. The need for candid assessments by Justice Department attorneys and for continued secrecy during the evaluation of the petition supports the use of sealed affidavits for this limited purpose.

from a state-administered account. Where the state suffers harm, it may bring suit. *See Illinois Dept. of Revenue v. Phillips,* 771 F.2d 312, 315–17 (7th Cir.1985); *cf., Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496–524, 105 S.Ct. 3275, 3285–87, 87 L.Ed.2d 346 (1985).

The statutory structure of the Second Injury Fund supports the conclusion that the state has standing to bring the civil action and is the real party in interest under Federal Rule of Civil Procedure 17(a). The Second Injury Fund is financed by a tax collected by the state. The state treasurer is the custodian of the fund, Mo.Rev.Stat. § 287.220.1, and the Division of Workers' Compensation administers it. Mo.Rev.Stat. §§ 287.220, 287.590. The state possessed the funds when they were misappropriated and was holding them for future disabled recipients. Because current and past Second Injury Fund recipients have received their compensation despite the alleged fraud, only the state was directly injured, and it can redress that wrong by replacing the funds if the suit is successful. The state therefore has standing.

Appellants contend that the civil action should have been brought in the name of the state Division of Workers' Compensation, or perhaps the state treasurer, rather than by the state itself. As appellants assert, the Second Injury Fund statute requires that all suits against the fund for benefits include the treasurer as a party, Mo.Rev.Stat. § 287.220.2, and the Division of Workers' Compensation may sue or be sued in its own name. Mo.Rev.Stat. § 287.590. The statute also provides, however, that if an employer does not have the required worker's compensation insurance, the "office of the attorney general of the state of Missouri shall bring suit." Mo.Rev.Stat. § 287.220.5. The statute does not specify that the attorney general must bring the action on behalf of the treasurer or any other office or department. *Id., see also* Mo.Rev.Stat. § 27.060. The situation in this case is comparable to a suit against an uninsured employer. Both involve the state pursuing a third party to recover expenditures from the Second Injury Fund that would not have been made had the third party complied with the law. No other provision of Missouri law limits the state's ability to bring this suit in its own name. The state is the real party in interest and has standing to petition for access.[4]

Accordingly, for the reasons discussed, the order of the district court is affirmed.

---

4. The district court presiding over the civil action recently denied the appellants' motions to dismiss that case for lack of standing. *Missouri v.*

*Roussin,* No. 4:93CV2633–DJS, slip. op. at 19–20 (E.D.Mo. April 10, 1995).