# United States Court of Appeals
## For the First Circuit

No. 03-1134

TEMPLETON BOARD OF SEWER COMMISSIONERS,

Plaintiff, Appellant,

v.

AMERICAN TISSUE MILLS OF MASSACHUSETTS, INC.,
NORTHEAST WASTE TREATMENT SERVICES, INC.,
ERVING INDUSTRIES, INC., BALDWINVILLE PRODUCTS, INC.,
AMERICAN TISSUE CORPORATION,
NOUROLLAH ELGHANAYAN and MEHDI GABAYZADEH,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Schwarzer,[*] Senior District Judge.

Stephen M. Leonard, with whom Brown Rudnick Berlack Israels
LLP, was on brief, for appellant.
T. Christopher Donnelly, with whom Michael S. D'Orsi and
Donnelly, Conroy & Gelhaar, LLP, were on brief, for appellees.

December 9, 2003

---

[*] Of the Northern District of California, sitting by designation.

**TORRUELLA, Circuit Judge.** Plaintiff-Appellant Templeton Board of Sewer Commissioners ("Templeton") appeals the district court's dismissal of its third amended complaint ("complaint") pursuant to Fed. R. Civ. P. 12(b)(1), 12(c) and 12(h)(3). The district court concluded it did not have subject matter jurisdiction over Count I of the complaint under 28 U.S.C. § 1331,[1] and therefore lacked supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367. After careful review, we affirm.

## I. BACKGROUND

### A. Facts

The facts related to this appeal are largely undisputed and are taken from the district court's memorandum and order. Templeton Bd. of Sewer Comm'rs v. Am. Tissue Mills, No. 96-40140 (NMG) (D. Mass. Dec. 19, 2002). In March 1974, the town of Templeton entered into a Waste Management Contract with Baldwinville Products, Inc. ("Baldwinville") and its owner, Erving Industries, Inc. ("Erving"),[2] by which Templeton agreed to build a wastewater treatment plant ("the plant") and make the plant

---

[1] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331 (2000).

[2] The Motion to Dismiss was filed by defendant-appellee Nourollah Elghanayan. Other defendants contested whether they were parties to the agreement that gives rise to the dispute, but for the purpose of clarity, we do not differentiate between defendants and address only the jurisdictional claim.

available to Erving and Baldwinville for treatment of their wastewater. The contract provided, inter alia, that: (1) Templeton "shall retain legal title to all wastewater facilities," (Waste Management Contract, Section XV); (2) Templeton shall pay . . . One Dollar ($1.00) per year consideration for [defendants] to operate the [plant]" (id., Section XVI B.2); (3) Templeton would "apply for Federal and/or State construction grants for its wastewater treatment facility." (Id., Section VI). Finally, it provided that (4) Erving and Baldwinville would pay the net operating costs of the plant as well as 95.5% of the net capital costs of the plant. (Id., Section XVI B.1(a) and (c)).

Templeton applied to the Environmental Protection Agency ("EPA") for a construction grant. The agency approved the grant, and the plant was built and became operational.

In 1991, defendant American Tissue Mills of Massachusetts, Inc. ("ATM"), purchased Baldwinville's operating assets. An Assignment and Assumption Agreement was executed, assigning Baldwinville's rights and liabilities under the Waste Management Contract to Northeast Waste Treatment Services, Inc. ("Northeast"), an ATM subsidiary. From 1991 until April 3, 2002, ATM and Northeast operated the plant.

In March 1995, the EPA informed Templeton that the Clean Water Act ("CWA"), 33 U.S.C. § 1284(b)(1), required Templeton to implement a user charge system whereby each user of the plant must

pay a proportionate share of the cost of operating and maintaining the entire wastewater treatment system based upon that user's contribution to the total waste flow.  The EPA also advised Templeton that the user charge system specified by the Waste Management Contract was inconsistent with the user charge system required by the CWA.  A subsequent EPA memorandum received by Templeton in September 1995 concluded that the contract user charge system must be revised in order to comply with the EPA's regulatory scheme.

### B.  Procedural History

Templeton filed its initial complaint in the district court in June 1996.  Count I sought a declaration of the parties' rights, specifically whether ATM was required to pay a user charge which included payment for other treatment works pursuant to § 204 of the CWA, 33 U.S.C. § 1284, and the EPA regulations thereunder. Jurisdiction was premised upon 28 U.S.C. § 1331, as the plaintiff was allegedly seeking relief under the CWA, and the remaining state law claims were entertained pursuant to 28 U.S.C. § 1367.  Although the complaint was amended three times, Count I did not materially change. It stated, in relevant part:

> 12.    Under the Agreement, the Town is obligated, among other things, to:
>        a.    construct a wastewater treatment plant (the "Plant") with an average daily flow capacity of approximately three million gallons and agree to make the Plant available to The Company for

-4-

treatment of its wastewater. (Sections II and III);

   b. maintain and operate the Plant and retain a third party to operate the Plant with prior approval of The Company. (Section IV); and

   c. apply for federal and/or state construction grants for the Plant. (Section V).

. . . .

18. 33 U.S.C. § 1284 states as a condition of any grant for any project for any treatment works that the applicant for the grant must adopt a system of charges such that each recipient of waste treatment services within the applicant's jurisdiction pays its proportionate share of the cost of operation and maintenance (including replacement) of any waste treatment services provided by the applicant.

. . . .

23. The EPA has informed the Commissioners, and the Commissioners agree, that the Town is required under the Clean Water Act and the regulations promulgated thereunder to implement a user charge system based on actual use of wastewater treatment services such that each user, including America [sic] Tissue, pays its proportionate share of operation and maintenance . . . based on each user's proportionate contribution to the total waste contributed by all users. See 40 CFR 35.929-1. . . .

24. . . . It is the Commissioners' and the EPA's position that the requirements of the Clean Water Act and regulation promulgated thereunder supersede the Agreement. [Relying on 40 CFR 35.929-2(g)].

Third Amended Compl. at 3-6.

In 1997, Templeton moved for partial summary judgment on Count I seeking, inter alia, a declaration that ATM was subject, under the contract and federal law, to a user charge system for the use of the treatment works in compliance with the CWA and EPA

-5-

regulations. The district court concluded that Templeton's interpretation of the federal requirements was correct, but denied the summary judgment motion because material facts were still in dispute. Templeton Bd. of Sewer Comm'rs v. American Tissue Mills, No. 96-40140 (NMG) (D. Mass. Dec. 9, 1997). The district court denied the motion for summary judgment because the record failed to establish a conflict between the contract and the EPA regulations.[3]

On October 17, 2002, defendant-appellee Elghanayan, an alleged officer, director and shareholder of ATM and Northeast, filed a motion to dismiss the complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), 12(c) and 12(h)(3), arguing primarily that the district court did not have subject-matter jurisdiction over Count I because it did not arise under federal law. The district court granted the motion.

## II. ANALYSIS

Appellee Elghanayan argues that the district court had no subject-matter jurisdiction under § 1331 because the CWA, the statute upon which appellant purported to base jurisdiction, does not provide a private right of action. Appellant argues that, notwithstanding this lack of a private right of action, Count I involves a substantial question of federal law, and thus jurisdiction under § 1331 is proper.

---

[3] The district court also denied the defendants' cross-motions for summary judgment on other grounds in the December 1997 Memorandum and Order.

-6-

We review the district court's dismissal of the complaint for lack of subject matter jurisdiction de novo.  Sallen v. Corinthians Licenciamentos LTDA, 273 F.3d 14, 23 (1st Cir. 2001). We draw all reasonable inferences in favor of Templeton.  Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).

Determining whether "arising under" jurisdiction exists is a particularly difficult task.  We must first determine whether Count I of the Third Amended Complaint alleges a federal cause of action.  If not, then we must inquire into whether some element of the claim depends on the resolution of a substantial, disputed question of federal law.  If a question of this nature exists, federal jurisdiction will lie.  See West 14th Street Commercial Corp. v. 5 West 14th Owners Corp., 815 F.2d 188, 193 (2d Cir. 1987) ("To determine whether the court has federal question jurisdiction to decide the case, the complaint must contain either a federal cause of action or a state cause of action embodying a substantial federal question.").

**A.  Private Rights of Action**

The Supreme Court of the United States has established that a district court properly exercises jurisdiction under Section 1331 when a plaintiff's complaint is based on a right conferred under federal law.  Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666 (1974).  Whether a claim arises under federal law is determined under the well-pleaded complaint rule.  Franchise Tax

Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 10 (1983); see also Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908). Under that rule, "[the jurisdictional question] must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration," without reference to any other pleadings. Franchise Tax Bd., 463 U.S. at 10 (internal quotations omitted). In other words, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." Id. at 10-11 (quoting Gully v. First Nat'l Bank, 299 U.S. 109, 112 (1936)).[4]

There is no private right of action under the CWA. Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Assoc., 453 U.S. 1 (1981). In National Sea Clammers, the Supreme Court stated that "[i]n view of the[] elaborate enforcement provisions [of the CWA] it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing

---

[4] The present action is a declaratory judgment action. The Supreme Court has stated that a litigant may not defeat the well-pleaded complaint rule by bringing a declaratory judgment action. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 673-74 (1950). The underlying coercive action in this complaint is a state breach of contract claim. Neither party disputes this conclusion. Templeton states that this case involves a substantial interpretation of federal law. Therefore, notwithstanding the form of the complaint, this court is under an obligation to determine whether the resolution of the breach of contract action involves a substantial question of federal law which gives rise to subject matter jurisdiction.

under [the CWA]."  Id. at 14.  Templeton does not dispute this conclusion.

### B.  Merrell Dow Pharmaceuticals

If a cause of action is not created under a federal law, § 1331 jurisdiction may lie "'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'"  Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 808-09 (1986) (quoting Franchise Tax Bd., 463 U.S. at 9). This legal quandary is generally referred to as the litigation-provoking problem, or the presence of a federal issue in a state-created cause of action.  Merrell Dow, 478 U.S. at 809-10.  In Merrell Dow, the Supreme Court held that the district court did not have jurisdiction under § 1331, where the plaintiff alleged a state tort claim but pointed to federal law as evidence of the standard of care.  Given that there was no private right of action under the federal law in question, the Court proceeded to examine whether a substantial question of law was implicated.  It held that "the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system."  Id. at 814.  The Court then analyzed the plaintiff's arguments regarding the federal interest in uniformity and the special circumstances implicated in the case.  The Court found both arguments unavailing, and found no subject matter jurisdiction.

## C. Substantial Question of Federal Law

The Courts of Appeals, including this Circuit, have elaborated on the holding announced in Merrell Dow. We begin with a review of our post-Merrell Dow cases.[5] Three of our recent decisions are relevant to the present controversy. PCS 2000 LP v. Romulus Telecommunications, Inc., 148 F.3d 32 (1st Cir. 1998) dealt with the issue of whether the Federal Arbitration Act ("FAA") alone could be a source of subject matter jurisdiction. The Supreme Court held in Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 25 n.32 (1983), that the FAA created a federal body of law, but not an independent source of federal jurisdiction. Elaborating on that point, we held that the complaint at issue in PCS 2000 LP must be dismissed for lack of subject matter jurisdiction. PCS 2000 LP, 148 F.3d at 34. Specifically, we noted the fact that "th[e] case peripherally

---

[5]  Two cases cited by appellant as relevant to the issue are clearly distinguishable. In Arroyo-Torres v. Ponce Federal Bank, F.B.S., 918 F.2d 276, 278-79 (1st Cir. 1990), we held that the plaintiff had no private right of action under the Currency and Foreign Transaction Reporting Act. Arroyo-Torres did not analyze whether there was a substantial federal question and affirmed the district court's dismissal without reference to Merrell Dow. We concluded that the district court should have dismissed the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Arroyo-Torres, 918 F.2d at 280. The case is therefore not relevant to the question at hand. In Nashoba Communications Ltd. Partnership No. 7 v. Danvers, 893 F.2d 435 (1st Cir. 1990), we engaged in the § 1331 analysis. However, that case turned on the issue of whether federal jurisdiction was based on an anticipatory federal defense. Our analysis centered on that issue, and we held that the plaintiff ran afoul of the well-pleaded complaint rule.

involve[d] [federal] bidding practices, and that cases sometimes arise under federal law when an interpretation of federal law is outcome-determinative." Id. at 35 (citing Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 199 (1921)). However, we further stated that "section 503(b) of the Communications Act confers no private right of action, and the plaintiffs' complaint only advances non-federal claims." Id. We deemed the connection too tenuous to confer federal jurisdiction. Finally, we observed that, "[n]o less an authority than the Supreme Court has made this clear. Unless a federal statute bestows a private right of action, courts ought to presume that Congress did not intend the statute to confer federal jurisdiction." Id. Therefore, PCS 2000 LP endorses the view espoused by appellee, but recognizes that when the interpretation of federal law is outcome-determinative, subject matter jurisdiction may be properly exercised.

We explored the same issue in Almond v. Capital Properties, Inc., 212 F.3d 20 (1st Cir. 2000). There, the plaintiff's action was removed from state court on the ground that it came within the federal court's subject matter jurisdiction. We assumed for the purposes of the holding that the cause of action was not created under federal law. Id. at 23. We went on to explore an alternative basis for obtaining federal jurisdiction -- that a substantial question of federal law was involved. Id. We characterized the claim as follows: "[t]he central issue properly

-11-

presented . . . is whether [defendant's] promise to the [Federal Railroad Administration] includes an obligation to obtain the FRA's approval before implementing the increase in parking charges at issue in this case."  Id.  Because the Supreme Court has consistently held that the rights and obligations of the United States and its agencies are governed exclusively by federal law, we held subject matter jurisdiction existed.  Id. at 24.  Appellee argues that this case is inapposite.  To the extent that the rights and obligations of the United States and its agencies will always be a matter of federal law, appellee is correct.  However, we believe that this case also stands for the proposition that there is a discrete type of case where federal subject matter jurisdiction will lie notwithstanding the absence of a federal cause of action.

The reasoning in Almond relied on Judge Posner's opinion in Price v. Pierce, 823 F.2d 1114 (7th Cir. 1987).[6]  Price involved a contract dispute filed by prospective tenants (designated by the court as third-party beneficiaries) against multiple defendants,

---

[6]  The parties cite the First Circuit case of Penobscot Nation v. Georgia-Pacific Corp., 254 F.3d 317 (1st Cir. 2001), cert. denied, 534 U.S. 1127 (2002).  While that case engaged in some analysis of the issue of federal jurisdiction, we held that regardless of the jurisdictional issue, the district court was bound by the ruling of the Supreme Judicial Court of Maine.  Therefore, the case was decided on issue preclusion grounds, not under § 1331, and is irrelevant to the present issue.  In any event, the opinion's discussion of § 1331 merely reiterates the points made in Almond and Price and does not rely on Smith.

including the Secretary of Housing and Urban Development ("HUD"), challenging the allocation of lower-income family housing. The contract in question was between private parties. However, in order to resolve the dispute the court would have to interpret a contract provision approved by a federal agency pursuant to a federal statutory scheme. The Seventh Circuit held that

> [t]he issue is potentially so important to the success of the program--since on its resolution may turn the amount of lower-income housing actually provided--that we believe that Congress, had it thought about the matter, would have wanted the question to be decided by federal courts applying a uniform principle.

Price, 823 F.2d at 1119-20.

The Seventh Circuit's observation is especially relevant: "Section 1437f(b)(2) contemplates that HUD will enter directly or (as here) indirectly. . .into contractual relations with developers all over the country. . . ." Id. at 1119. In Templeton's case, the EPA has not contracted on its behalf, and therefore Templeton (or anyone else for that matter), would not have standing to sue the agency or its contractors. However, the contract entered into in the instant appeal explicitly contemplated the application of federal grants, which in turn obligated the parties to abide by the EPA regulations. Our opinion in Almond embraces Price "pending further enlightenment from the Supreme Court." Almond, 212 F.3d at 24. A subsequent Seventh Circuit case held that "a federal rule of decision is necessary but not sufficient for federal jurisdiction.

There must also be a right of action to enforce that rule." Seinfeld v. Austen, 39 F.3d 761, 764 (7th Cir. 1994) (quoting Dillon v. Combs, 895 F.2d 1175, 1177 (7th Cir. 1990)).  Seinfeld failed to address the discrete class of cases where a substantial federal question may confer jurisdiction under § 1331.[7]

Other Circuits reviewing the discrete issue of whether there is a substantial question of federal law have produced confusing (if not conflicting) opinions on the matter.  In a case with facts similar to the instant appeal, the Fourth Circuit found that the Clean Air Act conferred jurisdiction under § 1331, notwithstanding the absence of a private right of action under the federal act.  Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 807 (4th Cir. 1996).  Plaintiff sued several defendants claiming that it was entitled to emission allowances issued to Ohio Power by the EPA, and seeking money damages.  The court determined that Section 408(i) of the Clean Air Act did not create a private remedy.  However, that did "not fully resolve the question of whether Ormet's claim, alleging ownership of emission allowances . . . arises under federal law . . . ."  Id. at 806.  Whether there was a "question sufficiently substantial to arise under federal law," was another avenue for obtaining jurisdiction.  Id.  After reviewing Merrell Dow, the Fourth Circuit held that federal

---

[7]  In addition, it is pertinent that Seinfeld relies entirely on Merrell Dow, whereas Price engages in the jurisdictional analysis without mentioning Merrell Dow.

-14-

jurisdiction did exist, because, "to resolve that dispute, a court must interpret both the Act and the contract to decide whether Ormet is party to a 'life-of-the-unit, firm power contractual arrangement,' as that phrase is defined in the Act." Id. at 807. In addition, the Fourth Circuit considered Congress's explicit intent that the EPA not be burdened with "resolving private disputes over a unit's allowances," Ormet, 98 F.3d at 805, and the fact that the system of freely transferable allowances was "critical to the Acid Rain Program." Id. at 807 (citing the legislative history of the particular section of the Act). Finally, uniformity was considered imperative to the program's success. Id. Therefore, the Fourth Circuit held that there was a substantial federal interest and subject matter jurisdiction was proper under § 1331. In doing so, the court endorsed the continuing validity of Smith and Franchise Tax Board. Cf. Mulcahey v. Columbia Organic Chem. Co., 29 F.3d 148 (4th Cir. 1994).

The district court in this case relied on the Sixth Circuit case of Board of Trustees of Painesville Township v. City of Painesville, 200 F.3d 396 (6th Cir. 1999). In City of Painesville, the City, in an effort to expand its wastewater treatment facilities, applied to the EPA for a grant. Although the grant suggested that the plaintiffs would have access to the new facilities, the City refused to provide it. Plaintiffs brought suit alleging violations of Section 204 of the CWA. The Sixth

-15-

Circuit held that because the CWA provided no private right of action, the district court could not exercise jurisdiction over the claims. Id. at 400. The court made no mention of Smith or Franchise Tax Board in its opinion. The district court reasoned, on the basis of Painesville, that "Templeton's claim under the CWA is, therefore, frivolous and insufficiently substantial to warrant the exercise of federal subject-matter jurisdiction." The opinion goes further still, assuming arguendo that even if Templeton's claim required the interpretation of the CWA, it

> would still lack subject-matter jurisdiction over the claim because the congressional determination that there should be no federal remedy for violation of this federal statute [i.e. that there is no private right of action] is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently substantial to confer federal-question jurisdiction.

(quoting Merrell Dow, 478 U.S. at 814 (internal quotations omitted)).

We arrive at the crux of our decision. We agree with the district court that under Merrell Dow, the plaintiff's cause of action cannot give rise to a federal cause of action as this is clearly foreclosed by the Supreme Court's decision in National Sea Clammers. Nor do we think that plaintiff's argument can succeed under the Smith/Franchise Tax Board rationale.

-16-

We do not believe that merely because a court will have to interpret the federal regulations, it necessarily follows that federal jurisdiction exists.  We agree with the Fourth Circuit that "the determination of whether a federal issue is sufficiently substantial should be informed by a sensitive judgment about whether the existence of federal judicial power is both appropriate and pragmatic" and that "at bottom, we must determine whether the dispute is one that Congress intended federal courts to resolve."  Ormet, 98 F.3d at 807.  We see no indication, and appellant has pointed to none, that Congress intended the CWA and its regulations to confer federal question jurisdiction.  See J.A. Jones Constr. Comp. v. City of New York, 753 F. Supp. 497 (S.D.N.Y. 1990)(holding that the incorporation of EPA regulations under the CWA into a contract did not give rise to federal question jurisdiction when suing for breach of contract).  The complaint before the district court did not present a substantial question of federal law.  We agree with the district court's conclusion that this action is, at its core, a breach of contract claim.

Further, while it may be argued that resolution of Count I of appellant's third amended complaint may require some application and interpretation of the Clean Water Act and the EPA Guidelines, this cannot rise to a substantial question of federal law.  The federal issue, assuming one exists, is tangential to the parties' contractual rights.  In addition, the EPA's interest in

effective enforcement will not be prejudiced by the absence of a federal court's review. In fact, the EPA delegates these matters to state agencies as a matter of course. The language of the complaint in this case reflects the collateral nature of appellant's claim. The statute cited, 33 U.S.C. § 1284, requires certain parameters to be met when the EPA issues grants. The grant was contemplated by the Waste Management contract entered into by the parties. If either party should break with the requirements of § 1284 and its accompanying regulations, the EPA may choose to take action. However, the parties cannot create jurisdiction by reference to this section when the dispute arises from their contractual obligations. The federal question here is insubstantial because it does not define the rights of the parties or provide them with a remedy. See Franchise Tax Bd., 463 U.S. at 20-21 (stating that "what is needed is . . . a selective process which picks the substantial causes out of the web and lays the other ones aside."). We can discern nothing more in this cause of action than a state law breach of contract claim over which the district court did not have subject matter jurisdiction.

## III. CONCLUSION

For the reasons stated above, we affirm the district court's dismissal of appellant's third amended complaint.

**Affirmed**.

-18-